IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
| --- | --- | --- |
| | ) | |
| | ) | 2:12-cr-162 |
| v. | ) | |
| | ) | |
| MARIO RODGERS, ALLAN WILLIAMS, | ) | |
| ERIC EVERETT, BRANDON BOONE, | ) | |
| JOSH WILLIAMS, TERRELL PERCY | ) | |
| WILLIAMS, MICHAEL PORTER and | ) | |
| DERRICK KNOX, | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Pending before the Court is DEFENDANT'S MOTION TO SUPPRESS AND/OR PRECLUDE POST-ARREST STATEMENT (WITH CITATION TO AUTHORITY) (ECF No. 697) filed by Allan Williams.[1] The government, with leave of Court, filed a RESPONSE TO DEFENDANTS' MOTIONS TO SUPPRESS AND/OR EXCLUDE (ECF No. 815). On May 7, 2014, the Court ordered an evidentiary hearing to consider Williams' motion, and the hearing was conducted on May 21, 2014. The motion is now ripe for disposition.

Williams moves to suppress the statement(s) allegedly made by him while he was being transported by FBI agents Thomas Welsh and Scott Meyers from Warren, Ohio to Pittsburgh following his arrest on June 28, 2012. Williams raises two arguments in support of his motion. First, he contends that the statement(s) was not disclosed in a timely fashion and must, therefore, be suppressed under Fed. R. Crim. P. 16. Second, he contends that he was never advised of his *Miranda* rights prior to allegedly making the statement(s).

---

[1] Several other motions in limine have been filed in this matter and will be ruled upon in a separate Memorandum Order.

1

I.  **Findings of Facts**

This case arises from of a lengthy investigation of alleged cocaine and heroin trafficking in and around Washington, Pennsylvania. Williams is charged in Count I of the Superseding Indictment with conspiracy to distribute and possess with intent to distribute five (5) kilograms or more of cocaine. Of the 20 Defendants named in either the Original or Superseding Indictment (or both), 12 have entered guilty pleas. Eight, including Williams, remain for trial.

During the evidentiary hearing, the Court heard testimony from FBI agents Welsh and Meyers, along with agent Melissa Fortunato, a crisis negotiator based out of the FBI's Cleveland field office who assisted in Williams' arrest. None of the agents were involved in the underlying investigation of the conspiracy alleged in the Superseding Indictment; however, each was involved in Williams' arrest and/or subsequent transport from Warren, Ohio to Pittsburgh, as part of a large-scale, coordinated "take-down" plan. The Court also admitted one document into evidence during the hearing: a copy of the FD-395 Advice of Rights form, which has been marked as government exhibit 1. In accordance with Fed. R. Crim. P. 12(d), the Court makes the following findings of fact, which are relevant to deciding this motion:

1. Defendant was arrested on the morning of June 28, 2012, when members of the FBI SWAT team based in Cleveland, with the assistance of FBI agents based out of Pittsburgh and local police, executed an arrest warrant at his apartment in Warren, Ohio.

2. Members of the FBI's Cleveland SWAT team went into the apartment first and took Williams into custody.

3. Agents Welsh and Meyers stood outside the apartment during the actual arrest, entering only after Williams had already been taken into custody by the SWAT team.

4. Agents Welsh and Meyers escorted Williams to a SWAT van parked in front of

his apartment building.

5. Thereafter, agents Welsh and Fortunato (and possibly one other agent) joined Williams in the back of the SWAT van.

6. Meanwhile, Meyers left to get the vehicle that the agents would use to transport Williams to Pittsburgh for processing and his initial appearance.

7. While in the back of the SWAT van, agent Welsh read Williams his *Miranda* rights from the standard FBI Advice of Rights form (the FD-395 form).

8. After receiving the warnings, Williams advised agents Welsh and Fortunato that he understood his rights, and each agent signed the Advice of Rights form and indicated that the *Miranda* warnings had been provided to Williams in their presence.

9. Agent Welsh also made a handwritten note on the form, indicating that Williams was verbally advised of and understood his rights.

10. Williams did not, however, sign that portion of the form which indicated that he was expressly waiving his *Miranda* rights; nor did the agents ask him to do so, as they did not anticipate that there would be questioning of him during the drive to Pittsburgh since they had very limited knowledge about the case and were there only to effectuate an arrest warrant and transport Williams to Pittsburgh, not to conduct an interrogation.

11. After having been read the warnings, Williams did not invoke his right to remain silent or his right to counsel.

12. Williams was not questioned while he was in the back of the SWAT van, though he did raise concerns about what would happen to his mother in his absence, as he was her primary caregiver.

13. Five to ten minutes after he was placed in the back of the SWAT van, Williams

was transferred to the transport vehicle for the drive to Pittsburgh.

14. At the time, Williams was handcuffed with his hands behind his back, in accordance with FBI protocol.

15. The drive from Warren, Ohio to Pittsburgh took 1.5 to 2 hours.

16. Agent Meyers was the driver of the transport vehicle, while Agent Welsh was in the backseat behind Meyers and next to Williams, who was in handcuffs for the duration of the drive, but not placed in any other restraints besides a typical seatbelt.

17. Neither agent re-administered a *Miranda* warning after Williams was transferred from the SWAT van to the transport vehicle.

18. During the drive, agent Meyers made idle conversation with Williams with regard to his mother's medical condition and whether he liked living in Warren, Ohio, which had been Meyers' hometown.

19. Neither agent, however, posed questions to Williams about his involvement in the case.

20. At some point, however, Williams engaged agent Welsh in conversation about matters related to the case.

21. Specifically, after Williams again expressed concern about his mother, he inquired as to where he was being taken, when he would be permitted to return to Ohio, and what the charge(s) against him was.

22. Agent Welsh responded by explaining the charge(s) against Williams in a general sense and also explained that, once they arrived in Pittsburgh, Williams would have an initial appearance before a magistrate judge followed eventually by a detention hearing.

23. After learning about the charge(s) and the nature of the proceedings that would

take place in Pittsburgh upon his arrival, Williams volunteered the statement(s) that he now seeks to suppress regarding his alleged participation in a drug-trafficking operation.[2]

24.     Agent Welsh took notes regarding that which Williams said, and his notes were incorporated into a draft FD-302 form.[3]

25.     The agents subsequently asked Williams whether he would be willing to provide a statement when he arrived at the FBI office in the Southside of Pittsburgh, and he agreed to do so.

26.     Agent Welsh then placed a call to an FBI case agent involved in the investigation of the drug-trafficking operation of which Williams was allegedly a member, with the understanding that Williams would be de-briefed or questioned later that day or at a later date.

27.     After arriving in Pittsburgh, agents Meyers and Welsh took Williams to the FBI's office in the Southside where he was processed and then transported him to the United States Courthouse for his initial appearance.

**II.     Discussion**

Williams' initial argument has been mooted since the Court granted Defendants' motion to continue the trial in this matter from March 2014 until September 2014. While the Court harbors concerns about the apparent untimely production of the FD-302 Form, Williams cannot establish that he has been or will be be prejudiced by any delay in the production of that form. Thus, Rule 16 provides no basis for excluding the contents of the information in said report or

---

[2] Essentially, Williams is alleged to have said that he was Juan Worthey's "gofer" and that Worthey "would pay him $50 here and there[.]" Mot. to Suppress at 7 (ECF No. 697). He also allegedly disputed the amount of cocaine alleged in the Indictment.

[3] As of the suppression hearing on May 21, 2014, Williams' counsel had still not received a copy of the final version of the FD-302 Form. Only the working copy had been produced. According to representations by the government and testimony adduced at the hearing, the content of each of the documents is identical, but the format and headings may be different due to a change in computer programs. The Assistant United States Attorney, however, assured the Court that she would produce the final version of the form to Defense counsel promptly following the hearing.

the alleged statement(s) of Williams reflected in same, given the unrebutted testimony of FBI agents Welsh and Meyers.

Turning to the *Miranda* issue, Williams' primary contention is that he did not receive the proper warnings prior to having made the statement(s) attributed to him by the government. Before addressing that question, however, the Court must determine whether the law enforcement agents were even *required* to provide Williams with *Miranda* warnings prior to their encounter with him. The Supreme Court has made clear "that the special procedural safeguards outlined in *Miranda* are not required where a suspect is simply taken into custody, but rather where a suspect in custody is *subjected to interrogation*." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (emphasis added). Interrogation means "express questioning or its functional equivalent" – *i.e.* "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* By contrast, "[v]olunteered statements are not barred by the Fifth Amendment," notwithstanding the absence of *Miranda* warnings. *Miranda*, 384 U.S. at 478; *see also United States v. Young*, No. 04-cr-716, 2005 WL 2789185, at *3 (E.D. Pa. Oct. 25, 2005) ("Where no interrogation takes place, Defendant's oral statements are admissible.").

In this case, based on the unrebutted testimony adduced at the evidentiary hearing, the Court finds and concludes that Williams was not interrogated and thus he was not required to be Mirandized. Agent Meyers' idle conversation about Williams' mother and hometown was not reasonably likely to elicit an incriminating response. *See, e.g.*, *Mickey v. Ayers*, 606 F.3d 1223, 1235 (9th Cir. 2010) ("Casual conversation is generally not the type of behavior that police should know is reasonably likely to elicit an incriminating response."); *United States v. Tail*, 459

F.3d 854, 858 (8th Cir. 2006) ("Polite conversation is not the functional equivalent of interrogation."). Furthermore, Williams initiated the exchange with agent Welsh when he inquired about the charge(s) against him and where he was being taken by the agents. Agent Welsh's response – informing Williams about the charge(s) and describing the nature of the proceedings that would be forthcoming – was not the functional equivalent of express questioning. Rather, it was a "declaration, not a question," which "came only in response in a conversation which [Williams] himself initiated, and it should not be construed as an attempt to solicit information from [Williams]." *United States v. Jackson*, 863 F.2d 1168, 1172 (4th Cir. 1989); *see also United States v. Taylor*, 985 F.2d 3, 8 (1st Cir. 1993) (ruling that officer's response to defendant's inquiry "Why is this happening to me?" was not functionally equivalent to interrogation); *United States v. Johnson*, No. 08-cr-374, 2012 WL 1134036, at *3 (W.D. Pa. Apr. 4, 2012) ("Informing Johnson about the reasons for his arrest does not, standing alone, violate *Miranda*; rather, Johnson's remarks were unforeseeable."). Thus, even if Williams was never advised of his *Miranda* rights (which, as discussed *infra*, was not the case, according to the unrebutted testimony of the FBI agents who testified at the hearing), the statement(s) is admissible because it was not prompted by law enforcement interrogation.

Assuming, *arguendo*, that Williams was under interrogation during the drive to Pittsburgh, his statement(s) would nonetheless be admissible. When the government seeks to introduce a statement(s) made by a suspect during a custodial interrogation, it bears the burden of proving by a preponderance of the evidence that *Miranda* warnings were given. *United States v. Evans*, No. 08-cr-07-SLR, 2008 WL 2942141, at *3 (D. Del. July 30, 2008). Based on the credible and uncontroverted testimony of agents Fortunato and Welsh, the Court finds by a preponderance of the evidence that Williams was properly afforded *Miranda* warnings while he

7

was in the SWAT van awaiting transport to Pittsburgh: agent Welsh read Williams his rights directly from the Advice of Rights directive form.

The only remaining issue, then, is whether Williams validly waived his right to remain silent. The government must prove by a preponderance of the evidence that the waiver of Williams' *Miranda* rights was made "voluntarily, knowingly and intelligently" based on the totality of the circumstances. *Miranda*, 384 U.S. at 444; *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). The United States Supreme Court has made clear, however, that the government need not "show that a waiver of *Miranda* rights was express. An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." *Berghuis v. Thompkins*, 560 U.S. 370, 384 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.* In such case, "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* at 385. Moreover, law enforcement officials are "not required to obtain a waiver of [a suspect's] *Miranda* rights before commencing the interrogation." *Id.* at 388.

The record developed at the evidentiary hearing demonstrates that Williams validly waived his right to remain silent. First, the testimony at the hearing established not only that Williams received the requisite *Miranda* warnings from agent Welsh, but also that he understood the rights that the warnings were intended to protect. There is nothing in the record to contradict that testimony. Second, in making the statement(s) to agent Welsh after having been advised of his rights, Williams engaged in a "course of conduct indicating waiver" of his right to remain

8

silent. *See id.* Had he not wanted to speak with the agent Welsh, he could have unambiguously invoked his right to remain silent or his right to counsel, and agent Welsh would have been required to curtail any conversation. Or, he could have simply not said anything. Having chosen not to, he waived any challenge to the admissibility of the statement(s) he voluntarily made. Importantly, that Williams made his statement(s) some time "after he received a *Miranda* warning does not overcome the fact that he engaged in a course of conduct indicating waiver. Police are not required to rewarn suspects from time to time." *Id.* at 386. It is also immaterial that Williams never signed the Advice of Rights form, as it is beyond peradventure that "a valid *Miranda* waiver may be made orally . . . ." *United States v. Harris*, No. 08-cr-58, 2008 WL 5328843, at *4 (D. Del. Dec. 22, 2008). Finally, there is nothing in the record that even slightly suggests that the statement(s) was coerced. Williams has not contended that he was in any way incapacitated, sleep-deprived, threatened, or otherwise in a weakened mental state when he made the statement(s) – nor does the fact that Williams was placed in handcuffs during the drive to Pittsburgh establish coercion. *See United States v. Johnson*, 379 F. App'x 964, 969 (11th Cir. 2010) (citing *Shriner v. Wainwright*, 715 F.2d 1452, 1456 (11th Cir. 1983)). Accordingly, based on its review of the totality of the unrebutted facts and circumstances as established at the evidentiary hearing, the Court concludes that Williams "knowingly and voluntarily made a statement to [the agents], so he waived his right to remain silent." *Id.* at 387.

**III.     Conclusion**

For the reasons hereinabove stated, DEFENDANT'S MOTION TO SUPPRESS AND/OR PRECLUDE POST-ARREST STATEMENT (WITH CITATION TO AUTHORITY) (ECF No. 697) will be **DENIED**. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) 2:12-cr-162 |
| v. | ) |
| | ) |
| MARIO RODGERS, ALLAN WILLIAMS, | ) |
| ERIC EVERETT, BRANDON BOONE, | ) |
| JOSH WILLIAMS, TERRELL PERCY | ) |
| WILLIAMS, MICHAEL PORTER and | ) |
| DERRICK KNOX, | ) |
| Defendants. | ) |
| | ) |

## ORDER

**AND NOW**, this 27th day of May, 2014, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that DEFENDANT'S MOTION TO SUPPRESS AND/OR PRECLUDE POST-ARREST STATEMENT (WITH CITATION TO AUTHORITY) (ECF No. 697) filed by Allan Williams is **DENIED**. The government is permitted to introduce testimony and evidence regarding the alleged statement at the trial of this action.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:
    **Barbara K. Doolittle, AUSA**
    Email: Barbara.Doolittle@usdoj.gov
    **Jonathan B. Ortiz, AUSA**
    Email: jonathan.ortiz2@usdoj.gov
    **Jane Dattilo, AUSA**
    Email: Jane.Dattilo@usdoj.gov

    **Alonzo Burney, Esquire (for Mario Rodgers)**
    Email: aburneysr@comcast.net

**Christopher M. Capozzi, Esquire (for Allan Williams)**
Email: chris@cmcapozzilaw.com
**Christy Patricia Foreman, Esquire (for Eric Everett)**
Email: cforemanlaw@yahoo.com
**Steven C. Townsend, Esquire (for Brandon Boone)**
Email: stownsend@pghlaw.com
**Patrick J. Thomassey, Esquire (for Josh Williams)**
Email: pthomassey@hotmail.com
**Gary B. Zimmerman, Esquire (for Terrell Percy Williams)**
Email: garybzim@aol.com
**Michael E. Moser, Esquire (for Michael Porter)**
Email: memoser@comcast.net
**Stanley W. Greenfield, Esquire (for Derrick Knox)**
Email: greenfieldandkraut@verizon.net